Andrew D. La Fiura (PA 307891)
andrew.lafiura@jacksonlewis.com
Cynthia S. Sandoval (SBN 191390)
sandovac@jacksonlewis.com
Vandan Kapur (SBN 281773)
vandana.kapur@jacksonlewis.com
JACKSON LEWIS P.C.
5000 Birch Street, Suite 5000
Newport Beach, California 92660
Tel: (949) 885-1360
Fax: (949) 885-1380

Attorneys for Defendants
QUALITY SYSTEMS, INC. and NEXTGEN
HEALTHCARE INFORMATION SYSTEMS, LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| TRACI WOLBERT,<br><br>              Plaintiff,<br><br>    vs.<br><br>QUALITY SYSTEMS, INC. NEXTGEN HEALTHCARE INFORMATION SYSTEMS, and DOES 1 through 10, INCLUSIVE,<br><br>              Defendants. | **CASE NO.: SACV16-00009 JLS (DFMx)**<br><br>[Assigned to the Hon. Josephine L. Staton, Courtrm. 10A]<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE**<br><br>*[Filed concurrently with Notice of Motion and Motion, Declarations in Support, and [Proposed] Order]*<br><br>Hearing Date:     April 1, 2016<br>Time:             2:30 p.m<br>Courtroom:        10a<br><br>Complaint Filed:   December 3, 2015<br>Trial Date:   None Set |

/ / /

/ / /

/ / /

# <u>TABLE OF CONTENTS</u>

Page

## Contents

I.  INTRODUCTION ............................................................................................4

I.  STATEMENT OF RELEVANT FACTS ......................................................4

    A.  Background.............................................................................................4

    B.  Harassment & Retaliation Allegations ................................................5

    C.  Procedural History ...............................................................................7

        1.  Plaintiff's Original Action ........................................................7

        2.  Plaintiff's Current Action..........................................................8

II.  ARGUMENT ...............................................................................................9

    A.  Legal Standard......................................................................................9

        1.  This matter could have been brought in the Eastern District of Pennsylvania....................................................................................9

    B.  Transferring this matter to Pennsylvania will be convenient for the parties, witnesses and will promote the interests of justice.........................10

        1.  Pennsylvania is more convenient for the parties................................10

        2.  Pennsylvania is more convenient for the witnesses ...........................11

        3.  Evidence will be easier to access in the Eastern District ..................13

        4.  Plaintiff's Choice of Forum should be given no weight. ...................13

        5.  Other Factors .....................................................................................14

III.  CONCLUSION ...........................................................................................16

1

## <u>TABLE OF AUTHORITIES</u>

2

Page

3

**Federal Cases**

4

*Brooks v. City of San Mateo*,
5
229 F.3d 917 (9th Cir. 2000) ................................................. 15

6
*Catch Curve, Inc. v. Venali, Inc.*,
2006 U.S. Dist. LEXIS 96379 (C.D.Ca 2006) ........................... 14

7
*In re Apple, Inc.*,
8
602 F.3d 909 (8th Cir. 2010) ................................................. 14

9
*Int'l Shoe Co. v. Washington*,
(1945) 326 U.S. 310 .............................................................. 9

10
*Los Angeles Mem. Coliseum Comm. v. Oakland Raiders, Ltd.*,
11
89 F.R.D. 497, 501 (C.D. Cal. 1981) ..................................... 11

12
*Metz v. U.S. Life Ins. Co. et. al.*,
674 F.Supp. 2d 1141, 1145 (C.D. CA 2009) ........................9, 15

13
*Sacody Technologies v. Avant, Inc.*,
14
862 F.Supp. 1152, 1157 (S.D.N.Y. 1994) ............................... 10

15
*Saleh v. Titan Corporation et. al.*,
(2015) 361 F.Supp. 2d 1152, 1155 (S.D.Ca 2005) ..................... 9

16
*SkyRiver Tech. Solutions, LLC v. OCLC Online Computer Library Ctr., Inc.*,
17
No. 10-03305, 2010 U.S. Dist. LEXIS 119984 (N.D. Cal. Oct. 28, 2010) ................. 15

18
*Szegedy v. Keystone Food Prods.*,
No. 08-5369, 2009 U.S. Dist. LEXIS 83444 ............................. 15

19
*Williams v. Bowman*,
20
157 F. Supp. 2d 1103 (N.D. Cal. 2001) ..............................10, 14

21

**State Cases**

22

42 Pa. Cons. Stat. Ann. § 5322(b) ....................................... 9

23

24

**Federal Rules**

Fed. R. Civ. Proc. 45 ........................................................ 13

25

26

27

28

**Federal Statutes**

28 U.S.C. § 1332(a) ...................................................................................7, 9

28 U.S.C. § 1332 (c) ..................................................................................... 8

28 U.S.C. § 1391(b)..................................................................................... 10

28 U.S.C. §1404(a) ................................................................................9, 16

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Quality Systems, Inc. ("QSI") and NextGen Healthcare Information Systems, LLC, improperly pled in the First Amended Complaint as "NextGen Healthcare Information Systems" ("NextGen"), submit the following Memorandum of Points and Authorities in support of their motion to transfer venue of this matter from the Central District of California to the Eastern District of Pennsylvania.

## I.  INTRODUCTION

This is an employment discrimination matter arising out of Traci Wolbert's ("Plaintiff") termination as a Director of Program Management for Defendant NextGen, which is a wholly owned subsidiary of Defendant QSI.   Plaintiff alleges that she was sexually harassed by her supervisor, Steve Puckett, and then terminated in January 2015 in retaliation for complaining about it to human resources in August 2014.

In a clear example of forum shopping, Plaintiff has now (for the second time) filed this lawsuit in California despite the fact that she resides in Pennsylvania, she worked in Pennsylvania, the alleged harm occurred in Pennsylvania, the majority of the witnesses reside in Pennsylvania and her attorneys are located in Pennsylvania.  This matter should therefore be transferred to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).

## I.  STATEMENT OF RELEVANT FACTS[1]

### A.  Background

Among other things, Defendants develop and market computer-based medical practice management and electronic health records solutions.   Defendants are both incorporated and have their principal places of business in California.  First Amended Complaint ("Cmpl.") at ¶¶4-5.

Plaintiff was hired as a sales executive by Defendant NextGen in 2002.  *Id*. at ¶17. Plaintiff resided in California at the time of her hire in 2002 and worked out of her home.

---

[1] Defendants' factual recitation is limited to those facts relevant to the venue issue.

*See* Declaration of Traci Wolbert ("Wolbert Dec."), attached as Exhibit 1 to the Declaration of Andrew D. La Fiura ("La Fiura Dec.") at ¶¶ 2 & 6.[2]  At the time of her hire, Plaintiff signed an Offer Letter, Commission Plan and Confidentiality Agreement. *Id*. at ¶¶3-4[3].  In 2007, she moved to Pennsylvania, which is where she currently resides and where she resided and worked at all times relevant to this lawsuit. *See* Wolbert Dec. at ¶7; Cmpl. at ¶2.

In the spring of 2013, Plaintiff began reporting to Mr. Puckett, Defendant QSI's Chief Technology Officer ("CTO").  *Id*. at ¶17.  At the time, Plaintiff continued to work primarily out of her home in Philadelphia, PA.  Wolbert Dec. at ¶7; Declaration of Steven Puckett ("Puckett Dec."), attached as Exhibit 3 to the La Fiura Dec., at ¶7.[4]  When she was not working at home, Plaintiff worked out of her office in Defendant Nextgen's Horsham, PA location.  *Id*.  Puckett Dec. at ¶7.

At all relevant times, Mr. Puckett was a resident and citizen of the state of Florida. *Id*.  ¶2.  Although Plaintiff reported to Mr. Puckett, their interactions were almost exclusively over the telephone, email and/or text messages.  *Id*. at ¶8.  In fact, Plaintiff and Mr. Puckett were only in each other's physical presence approximately 20 times, and the vast majority of these personal encounters took place in Philadelphia or Horsham, PA.  *Id*. at ¶¶9-10.  Mr. Puckett and Plaintiff were never in each other's physical presence in the state of California.  *Id*. at ¶10.

**B.**  **Harassment & Retaliation Allegations**

Plaintiff alleges that Mr. Puckett began sexually harassing Plaintiff shortly after her transfer to his Department in the spring of 2013.  Cmpl. at ¶22.  In particular, Plaintiff

---

[2]  The Wolbert Declaration was submitted in Opposition to a motion to change venue Defendants filed in connection with a previous complaint filed by Plaintiff in this Court in April 2015.  As discussed in Section II(C), *infra*, the Court dismissed that complaint without prejudice on jurisdictional grounds.

[3]  A more legible copy of Plaintiff's Confidentiality Agreement is attached to the La Fiura Dec. as Exhibit 2.

[4]  Mr. Puckett's declaration was also submitted in connection with the prior action.

alleges that Mr. Puckett made various requests over email and text messages that Plaintiff travel with him to Paris, India and a condominium he owns in New Orleans for non-work related purposes. Plaintiff also claims that from January 2013 until March 2014, Mr. Puckett repeatedly pressured her to relocate with him to Irvine, California. *Id*. at ¶27. Finally, Mr. Puckett also allegedly sent Plaintiff additional inappropriate text messages that were "sexual and harassing in nature" and behaved in an inappropriate manner at unspecified company functions they "routinely attended" in various cities. *Id*. at ¶22-25.

On or about August 25, 2014, Plaintiff complained via telephone about Mr. Puckett to Donna Greene in Defendant QSI's human resources department located in Irvine, California. Plaintiff had subsequent telephone calls with Ms. Greene in September 2014 further detailing Mr. Puckett's alleged conduct. *Id*. at ¶37-38.

On October 1, 2014, Mr. Puckett learned from two of Plaintiff's co-workers, Dr. Robert Murry and Lisa Carden, that Plaintiff was exhibiting serious performance issues. Puckett Declaration at ¶11. This conversation occurred during a conference in Chicago, Illinois. *Id*. Then, on October 9, 2014, Plaintiff was informed via a telephone call from Ms. Greene that eight of Defendants' employees had filed complaints against her arising out of her poor management style. Cmpl. at ¶39. On October 10, 2014, Plaintiff's team of approximately thirty-five people was removed from her supervision. She was told that she would have a new position and would now be reporting to Ben Mehling, not Steve Puckett. She was informed of these decisions by Ms. Greene and Mr. Puckett over the telephone. Cmpl. at ¶45. Upon information and belief, Plaintiff was in Pennsylvania at the time of the telephone call. Puckett Decl. at ¶12.

On October 20, 2014, Plaintiff sent a letter to Defendant QSI's Board of Directors requesting an independent investigation into Mr. Puckett's and Ms. Greene's alleged actions, which she believed were in retaliation for her complaint of harassment about Mr. Puckett in August 2014. Cmpl. at ¶44. In response, Defendants retained an outside investigator, Matthias Wagener, to conduct an investigation. Plaintiff met with Mr. Wagener on November 6, 2014 at Defendant QSI's Irvine, California office. Cmpl. at

¶46.  Plaintiff's counsel, Ronald Greenblatt, was in attendance at the interview.  Wolbert Dec. at ¶11.  Plaintiff's other attorney, Patricia Pierce, did not attend the interview but, upon information and belief, exchanged email communications and voicemails with Mr. Wagener regarding the investigation.  She also provided Mr. Wagener with documentation which, according to her, supported Plaintiff's allegations.  Mr. Greenblatt and Ms. Pierce are based in Philadelphia and, upon information and belief, neither are residents of California. Plaintiff's second interview occurred over Skype on December 22 while she was presumably in Pennsylvania.  Of the 27 total interviews that were conducted, only eight of them were in-person interviews held in California. On the other hand, seven of the interviews were conducted in Pennsylvania by Mr. Wagener's Philadelphia based colleague and ten of them were conducted remotely over the internet or telephone. *See* La Fiura Declaration, Exh. 4.[5]

On or about December 18, 2014, Plaintiff learned that her work was being evaluated. Cmpl. at ¶49.  According to Plaintiff, this review was being conducted as part of the "effort to manufacture a record of poor performance . . . in order to justify her termination." Cmpl. at ¶50.  On January 30, 2015, Plaintiff was terminated over the telephone by Mr. Mehling.  Cmpl. at ¶54.

## C.   Procedural History

### 1.   Plaintiff's Original Action

Plaintiff originally filed this matter in the Central District of California on April 8, 2015 alleging claims for sexual harassment, failure to investigate and retaliation under the Fair Employment and Housing Act ("FEHA") and termination in violation of California public policy. *See* Docket No. 8:15-cv-00550, Entry #1. In doing so, however, Plaintiff failed to demonstrate that this Court had subject matter jurisdiction by neglecting

---

[5] Attached as Exhibit 4 to the La Fiura Declaration is an excerpt from Mr. Wagener's investigation report, which identifies all of the witnesses interviewed during the course of his investigation.  Unless indicated otherwise on the document, the interview was conducted in person.  All interviews marked with the initials "M.W." were conducted by Mr. Wagener in California.   All interviews marked with the initials "T.D." were conducted by Mr. Wagener's colleague, Theresa Dennis, in Pennsylvania.

to allege the parties' citizenship or the amount in controversy for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a). *Id.* at #11.   As a result, on April 20, 2015, this Court issued an Order for Plaintiff to show cause as to why the case should not be dismissed for lack of subject matter jurisdiction. *Id.*

On May 4, 2015, Plaintiff filed an Amended Complaint with this Court which, other than attempting to correct the apparent jurisdictional errors, remained the same in all respects. *Id.* at #12.   Defendants Answered the Amended Complaint on August 31, 2015 and, shortly thereafter, filed a Motion to Transfer Venue of the case to the Eastern District of Pennsylvania on September 18, 2015. *Id.* at ## 20 & 24.   While the Motion was pending, this Court properly discovered that, despite its April 20 Order to Show Cause, Plaintiff had still failed to properly assert a basis for subject matter jurisdiction. This time, Plaintiff failed to assert the states of incorporation for both Defendants, which is a prerequisite for asserting diversity jurisdiction under 28 US.C. § 1332(c)(1).   As a result, the Court dismissed Plaintiff's claims, in their entirety, without prejudice. *Id.* at # 29.

## 2.   <u>Plaintiff's Current Action</u>

On or about December 3, 2015, Plaintiff filed the instant matter in the Superior Court of California for the County of Orange.   The Complaint is almost identical to the first two complaints Plaintiff attempted to file in the Central District of California, with the exception that it does not assert a basis for federal jurisdiction. On January 5, 2016, Defendants removed the action to federal court pursuant to 28 U.S.C. ¶ 1332, and in doing so were able to properly assert a basis for diversity jurisdiction. *See* Docket No. 8:16-cv-00009 at #1.

Prior to Defendants answering Plaintiff's now federal complaint, Plaintiff filed her First Amended Complaint adding claims for harassment, retaliation and failure to prevent harassment under Title VII of the Civil Rights Act of 1964 ("Title VII"). *Id.* at # 14. Defendants answered the Amended Complaint on February 4, 2016 and now (again) move to transfer venue to the Eastern District of Pennsylvania. *Id.* at #15.

## II.   <u>ARGUMENT</u>

### A.   <u>Legal Standard</u>

28 U.S.C. §1404(a) states that "for the convenience of the parties and witnesses in the interest of justice, a district court may transfer any civil action to any other district court where it might have been brought." The analysis under 1404(a) requires two steps. First, the moving party must show that the transferee district is a district in which the matter "might have been brought." Second, the Court must consider whether transferring the case would be convenient for the parties and witnesses in the interest of justice. *See* 28 U.S.C. §1404(a) (2015); *Saleh v. Titan Corporation et. al.*, 361 F.Supp. 2d 1152, 1155 (S.D.Ca 2005).

### 1.   <u>This matter could have been brought in the Eastern District of Pennsylvania</u>

The first step requires the moving party to show that the transferee district has subject matter jurisdiction, personal jurisdiction and that venue would be proper. *Metz v. U.S. Life Ins. Co. et. al.*, 674 F.Supp. 2d 1141, 1145 (C.D. CA 2009). Here, these requirements are easily met. First, the Eastern District of Pennsylvania could have exercised subject matter jurisdiction based on the diversity of the parties pursuant to 28 U.S.C. 1332 and based on the federal question now raised in Plaintiff's newly added Title VII claim. *See* Cmpl. at ¶¶1-4. Second, the Eastern District of Pennsylvania can exercise personal jurisdiction over the parties since Plaintiff is a Pennsylvania resident and since both Defendants, although California corporations, have sufficient contacts with Pennsylvania such that exercising personal jurisdiction over them would not "offend traditional notions of fair play and substantial justice." 42 Pa. Cons. Stat. Ann. § 5322(b); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (internal quotation marks and citation omitted); Declaration of Jane Kurcon, attached as Exhibit 5 to the La Fiura Dec., at ¶5 (stating that Defendants employ over 500 people in

Pennsylvania and have countless customers in Pennsylvania).[6]

Finally, venue is proper in the Eastern District of Pennsylvania because a "substantial part of the events or omissions giving rise to the claim occurred" in Pennsylvania. 28 U.S.C. § 1391(b)(2). Plaintiff currently lives in Pennsylvania. She also lived and worked in Pennsylvania while she was allegedly receiving harassing telephone calls, emails and text messages. *Sacody Technologies v. Avant, Inc.*, 862 F.Supp. 1152, 1157 (S.D.N.Y. 1994) (The standard set forth in § 1391(a)(2) may be satisfied if a communication was "transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action."). In addition, she was allegedly demoted and then terminated over the telephone while she was presumably located in Pennsylvania. Puckett Declaration at ¶12.

As a result, the first step in the change of venue analysis has been met because this matter "might have been brought" in the Eastern District of Pennsylvania.

### B.   Transferring this matter to Pennsylvania will be convenient for the parties, witnesses and will promote the interests of justice.

Courts evaluate the following factors in deciding the second step of the change of venue analysis: (1) convenience of the parties; (2) convenience of the witnesses; (3) ease of access to the evidence; (4) any local interest in the controversy; (5) the relative court congestion and time of trial in each forum and (6) a plaintiff's choice of forum. *See Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001). In this case, all of the above factors strongly favor transferring this matter to Eastern District of Pennsylvania.

### 1.   Pennsylvania is more convenient for the parties

First, and perhaps most obviously, Plaintiff is a resident of Philadelphia, Pennsylvania making the Eastern District of Pennsylvania clearly the most convenient

---

[6] Ms. Kurcon's declaration was also submitted in connection with Defendants' original motion to change venue and, for that reason, bears the docket number of Plaintiff's previous action.

forum for her purposes.  Second, all of the attorneys in this case (with the exception of local counsel) are from Philadelphia – mere minutes from the Eastern District of Pennsylvania. Thus, transferring this matter to the Eastern District of Pennsylvania will enable the parties to dispense with the cost of local counsel and cut travel time for the parties and their attorneys from six hours by airplane to six minutes by taxi cab.

**2.**    **Pennsylvania is more convenient for the witnesses**

"The convenience of witnesses is . . . the most important factor in passing on a transfer motion."  *Los Angeles Mem. Coliseum Comm. v. Oakland Raiders, Ltd.*, 89 F.R.D. 497, 501 (C.D. Cal. 1981).  Here, Defendants intend to argue, among other things, that Plaintiff was not sexually harassed by Mr. Puckett, that a thorough investigation of her complaint was conducted and, finally, that her termination was for legitimate business reasons unrelated to any complaint Plaintiff made to Defendants' human resources department or Board of Directors.  Defendants believe that the following individuals will be critical witnesses to their defense.  Each individual's state of residence is listed, along with a general description of their anticipated testimony.

1.    Plaintiff, <u>Pennsylvania</u>.  Plaintiff will provide testimony regarding her claims and damages.

2.    Mr. Puckett, <u>Florida</u>.  Mr. Puckett will testify regarding Plaintiff's allegations of harassment and Plaintiff's work performance.

3.    Laura Anderson, <u>Pennsylvania</u>.  Ms. Anderson will provide testimony regarding Plaintiff's work performance.

4.    Russ Hill, <u>Pennsylvania</u>.  Mr. Hill will provide testimony regarding Plaintiff's work performance.

5.    Dawn Sowash, <u>Pennsylvania</u>.  Ms. Sowash will provide testimony regarding Plaintiff's work performance.

6.    Diane Spengel, <u>Pennsylvania</u>.  Ms. Spengel will provide testimony regarding Defendants' work environment and Plaintiff's work performance.

7.    Alicia Carden, <u>North Carolina</u>.  Ms. Carden will provide testimony regarding Plaintiff's work performance.

8.    Dr. Robert Murry, <u>New Jersey</u>.  Dr. Murry will provide testimony regarding Plaintiff's work performance.

9.    Ben Mehling, <u>California</u>.  Mr. Mehling will provide testimony regarding Plaintiff's work performance and her termination.

10.   Donna Greene, <u>California</u>.  Ms. Greene will provide testimony regarding Plaintiff's complaints of harassment and the company's investigation.

11.   Ronald Greenblatt, Plaintiff's counsel, <u>New Jersey</u> (upon information and belief).  Mr. Greenblatt was present during Plaintiff's interview(s) with Defendants' third party investigator and can provide testimony regarding the thoroughness of the investigation.

12.   Patricia Pierce, Plaintiff's counsel, <u>Pennsylvania</u> (upon information and belief).  Ms. Pierce participated in the third-party investigation and can provide testimony regarding the thoroughness of the investigation.

Kurcon Declaration at ¶4. In other words, of the 12 critical witnesses identified above, 6 of them (including Plaintiff) reside in Pennsylvania.  Of the remaining 6 witnesses, four of them live in states considerably closer to Pennsylvania than California (New Jersey, Florida and North Carolina). Furthermore, the only 2 witnesses who actually reside in California will not be difficult to produce for depositions and/or trial.  Specifically, Donna Greene remains an employee of Defendants and is therefore within their control. Ben Mehling, although a former employee, has been cooperative to date, and has already submitted an affidavit regarding his knowledge of the case.  *See* Affidavit of Benjamin Mehling attached as Exhibit 6 to the La Fiura Dec.  Moreover, the Eastern District of Pennsylvania can compel Mr. Mehling to appear for a videotaped deposition under Rule 45(a)(2) despite his residence in California provided the deposition occurs within 100

miles of his residence.  *See* F.R.C.P. 45(a)(2). [7]

In sum, this factor – which Courts consistently note is the most important factor in the change of venue analysis – weighs almost entirely in favor of transferring this case to the Eastern District of Pennsylvania.

### 3.    Evidence will be easier to access in the Eastern District

In general, Rule 45 of the Federal Rules of Civil Procedure sets a strict 100-mile geographic limitation on subpoenas seeking the production of deponents or physical evidence.  *See* Fed. R. Civ. Proc. 45(c)(1)(A) and 45(c)(2)(A).  Here, virtually all of the relevant party and non-party witnesses and the physical evidence in their possession are located within or closer to the Eastern District of Pennsylvania.  In addition, Plaintiff worked out of Horsham, Pennsylvania, which is where her personnel records are physically located.  Kurcon Declaration at ¶7.  Moreover, Plaintiff is seeking emotional distress damages, making her medical records highly relevant to her damages. Cmpl. at ¶¶. 71, 81, 88.  Presumably, Plaintiff's medical providers are within 100 miles of her Philadelphia residence and therefore within the subpoena power of the Eastern District of Pennsylvania and well outside the subpoena power of this Court. Finally, Plaintiff's Title VII claim was filed with and investigated by the Philadelphia office of the Equal Employment Opportunity Commission ("EEOC"), which is where all documents relating to the investigation are located.  Again, these documents will be much easier to access if the matter is pending in Philadelphia.

### 4.    Plaintiff's Choice of Forum should be given no weight.

Generally speaking, the plaintiff's choice of forum is given substantial weight in determining the appropriate venue. *Williams v. Bowman*, 157 F.Supp. 2d 1103 (N.D. CA 2001).  The plaintiff's choice is given less weight, however, where the plaintiff is not a resident of the chosen forum or where the forum lacks any significant connection to the

---

[7] Defendants anticipate that Plaintiff will identify another California resident, Mr. Wagener, as an additional witness.   Like Mr. Mehling, Mr. Wagener has been cooperative to date and Defendants anticipate no issue whatsoever in producing him for a deposition in Pennsylvania or California.   In addition, Mr. Wagener can likewise be ~~compelled to testify pursuant to Rule 45(a)(2) as discussed above.~~

acts giving rise to the litigation. *Catch Curve, Inc. v. Venali, Inc.*, 2006 U.S. Dist. LEXIS 96379 (C.D.Ca 2006); s*ee also In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010) (foreign plaintiff's choice of forum is "entitled to substantially less deference" because there is less reason to assume convenience and an increased risk of forum shopping).  In addition, "[i]f there is any indication that plaintiff's choice of forum is the result of forum shopping, plaintiff's choice will be accorded little deference."  *Williams*, 157 F.Supp. at 1106 (citations omitted).

Here, Plaintiff's decision to file her complaint approximately 3,000 miles away from her residence and place of employment represents obvious forum shopping. Plaintiff is not a resident of California, she did not work in California and no events of any significance occurred in California.  Her choice of venue in the Central District of California should be given virtually no weight.

### 5.    Other Factors

In addition, the local interest in this controversy is stronger in the Eastern District of Pennsylvania since it is where Plaintiff lived, worked and was allegedly harmed.  It is also substantially closer to almost all of the witnesses and where both parties' attorneys work and reside.  Other than the fact that Defendants are incorporated in California, the Central District of California has no connection to this matter whatsoever.[8]

Second, there is greater docket congestion in the Central District of California than the Eastern District of Pennsylvania.  Based on the internal records of the United States Judiciary, as of June 30 2015, the Central District of California had a total of 12,453

---

[8] Defendants anticipate that Plaintiff will argue that the documents she signed at the inception of her employment, i.e., her offer letter and confidentiality agreement, contain California choice of law provisions.  First, the offer letter simply sets forth Plaintiff's salary, start date, and benefit information. *See* Wolbert Dec. at Exh A.  It does not contain any California choice of law provision.  Second, the Confidentiality Agreement provides that the "validity interpretation, construction, and performance of *this Agreement* shall be governed by the laws of the State of California."  *See* La Fiura Declaration, Exhibit 1 (emphasis added).  While this language may suggest that disputes concerning the Confidentiality Agreement should be interpreted under California law, it does not support an argument that all suits concerning her employment should be decided under California law, nor is there any suggestion in the document that California is the proper *forum* for any disputes.

1    pending cases compared to just 8,592 pending cases in the Eastern District of
2    Pennsylvania.  *See United States District Court – Judicial Caseload Profile* (visited
3    February 4, 2016).[9]   In addition, the judgeships in the Central District of California
4    currently have more filings and pending matters than the judgeships in the Eastern
5    District of Pennsylvania.  *Id*.  And, if that were not enough, the Central District reports
6    655 weighted filings as compared to the Eastern District Court of Pennsylvania's 393.  *Id*.

7         Finally, we note that this matter involves no unique issue of California law such
8    that the Eastern District of Pennsylvania will be incapable of hearing the matter.  While
9    Plaintiff has brought a claim under FEHA and California common law, judges "'in each
10   jurisdiction are fully capable of deciding issues arising under'" the laws of another state.
11   *See Metz v. United State Life Ins. Co.*, 674 F. Supp. 2d 1141, 1148 (C.D. Cal. 2009)
12   (quoting *Szegedy v. Keystone Food Prods.*, No. 08-5369, 2009 U.S. Dist. LEXIS 83444,
13   at *20 (C.D. Cal. Aug. 26, 2009)); *see also SkyRiver Tech. Solutions, LLC v. OCLC*
14   *Online Computer Library Ctr., Inc.*, No. 10-03305, 2010 U.S. Dist. LEXIS 119984, at
15   *16 (N.D. Cal. Oct. 28, 2010) (stating that a non-California district court "is fully capable
16   of adjudicating claims that arise under California law").   In addition, Plaintiff's claim
17   arising under FEHA will be analyzed under the same standards as her claims under Title
18   VII, a federal statute with which courts in the Eastern District of Pennsylvania are
19   obviously familiar. *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).
20   / / /
21   / / /
22   / / /
23   / / /
24
25
26
27
28

[9]  See:  http://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables (relevant
excerpts and explanations of terms attached as Exhibit 7 to the La Fiura Dec.)

## III.   <u>CONCLUSION</u>

For all these reasons, a transfer of this action is appropriate and will serve the convenience of the Parties and witnesses and promote the interests of justice. Defendants respectfully request that their motion be granted and that this matter be transferred to the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1404(a).

Dated: February 23, 2016             JACKSON LEWIS P.C.


By:   */s/*
                       Andrew D. La Fiura (PA 307891)
                       andrew.lafiura@jacksonlewis.com
                       Cynthia S. Sandoval (SBN 191130)
                       sandovac@jacksonlewis.com
                       Vandana Kapur (SBN 281773)
                       vandana.kapur@jacksonlewis.com

Attorneys for Defendants
QUALITY SYSTEMS, INC. and NEXTGEN
HEALTHCARE INFORMATION SYSTEMS,
LLC

4849-8576-7470, v. 1

## **PROOF OF SERVICE**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CASE NAME: TRACI WOLBERT v. QUALITY SYSTEMS, INC.**

**CASE NUMBER: SACV16-00009 JLS (DFMx)**

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  5000 Birch Street, Suite 5000, Newport Beach, California 92660.

On February 24, 2016, I served the foregoing document(s) described as: **NOTICE OF MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE; DECLARATION OF ANDREW LA FIURA IN SUPPORT OF MOTION TO TRANSFER VENUE; AND [PROPOSED] ORDER** in this action by placing a true copy thereof in a sealed envelope addressed as follows:

Sharon R. Vinick, Esq.
Levy, Vinick, Burrell, Hyams LLP
180 Grand Avenue, Suite 1300
Oakland, CA  94612

Attorneys for Plaintiff TRACI WOLBERT

Tel :  (510) 318-7700
Fax : (510) 318-7701
sharon@levyvinick.com

Patricia V. Pierce, Esq.
Greenblatt, Pierce, Engle, Funt & Flores
123 South Broad St., Ste., 2500
Philadelphia, PA  19109

Attorneys for Plaintiff TRACI WOLBERT

Tel. :  (215) 735-1600
Fax :  (215) 735-1660
p.pierce@gpeff.com

☒    **BY NOTICE OF ELECTRONIC FILING**.   The above-listed counsel have consented to electronic service and have been automatically served by the Notice of Electronic Filing, which is automatically generated by CM/ECF at the time said document was filed, and which constitutes service pursuant to FRCP 5(b)(2)(D).

☒    **FEDERAL**   I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed February 24, 2016, at Newport Beach, California.

_____
Melanie Eyler