UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-00009-JLS (DFMx)            Date: April 11, 2016
Title: Traci Wolbert v. Quality Systems, Inc. et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Terry Guerrero | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANT:

Not Present                                                        Not Present

**PROCEEDINGS:**    (IN CHAMBERS) ORDER DENYING DEFENDANTS' MOTION TO TRANSFER VENUE (Doc. 20)

       Before the Court is Defendants Quality Systems, Inc. and NextGen Healthcare Information Systems, LLC's Motion to Transfer Venue. (Mot., Doc. 20.) Plaintiff Traci Wolbert opposes the Motion. (Opp., Doc. 25.) Defendants replied. (Reply, Doc. 26.) The Court finds this matter appropriate for disposition without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15. For the reasons stated below, the Court DENIES Defendants' Motion.

**I. BACKGROUND**

       In 2002, Wolbert was hired by NextGen, a subsidiary of Quality Systems.[1] (FAC ¶¶ 17-18, Doc. 14.) Both NextGen and Quality Systems are California corporations and have a principal place of business in Irvine, California. (*Id.* ¶¶ 4, 6.) Wolbert was hired as a sales executive to be based in Southern California. (*Id.* ¶ 17.) At the time of her hiring, Wolbert resided in Long Beach, California. (La Fiura Decl., Ex. 1, "Wolbert Decl.," ¶ 2, Doc. 20-2.) From 2002 to 2007, Wolbert lived in California and worked from her home. (*Id.* ¶ 6.) In or around the start of 2008, Wolbert moved to Pennsylvania. (*Id.* ¶ 7.) Even after her relocation, Wolbert remained a "remote employee" and worked

---

[1] Except where otherwise noted, the Court obtains the allegations in this Background section from Wolbert's First Amended Complaint. (*See generally* FAC, Doc. 14.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-00009-JLS (DFMx)                                       Date: April 11, 2016
Title: Traci Wolbert v. Quality Systems, Inc. et al.

primarily from her home. (*Id.*) Throughout her employment, however, Wolbert "continued to work with clients in California." (*Id.*) As part of her work, Wolbert occasionally traveled to California to meet with and service clients. (*Id.*) Wolbert is currently a resident of Philadelphia, Pennsylvania. (FAC ¶ 2.)

On July 13, 2013, Wolbert was promoted to the position of "Director." (*Id.* ¶ 23.) In this position, Wolbert reported directly to Steve Puckett, a Senior Vice President and Chief Technical Officer of Quality Systems. (*Id.* ¶¶ 21, 23.) Puckett started his employment with Quality Systems in 2009 and has served as CTO since 2012. (La Fiura Decl., Ex. 3, "Puckett Decl.," ¶ 1, Doc. 20-2.) Since 2007, Puckett has been a resident of Florida. (*Id.* ¶ 2.) Puckett works primarily from Quality Systems' offices in Irvine, California, and his home in Orlando, Florida. (*Id.* ¶ 7.) As a result, some – if not most – of Puckett's communications with Wolbert were done via email, text message, and telephone. (*Id.* ¶ 8.)

In her role as Director, Wolbert directed NextGen's clinical content program for one of its flagship "KBM products" and its new "NG7 software." (FAC ¶ 24.) For much of her time as Director, Puckett "publically lauded" Wolbert's performance. (*Id.* ¶ 25.) During this period she received bonuses totaling at least $96,000. (*Id.* ¶ 26.) Shortly after her promotion, however, Puckett started to make "inappropriate demands upon and requests of" Wolbert. (*Id.* ¶ 27.) These demands included that Wolbert "travel with [Puckett] to non-worked [sic] related activities," and that she "join him in various annual hedonistic events in New Orleans[.]" (*Id.*) Wolbert denied Puckett's invitations and told him she was not interested in a romantic relationship and that she had a boyfriend. (*Id.* ¶ 28.) Nevertheless, Puckett continued to "demand that she travel with him." (*Id.*) Puckett also "repeatedly sent her text messages that included inappropriate pictures of himself at these events, and invitations to these events with electronic links to nudity laced pictures[.]" (*Id.*) The FAC alleges, on information and belief, that Puckett drank heavily, and that during these periods "he routinely sent [Wolbert] text messages . . . which were sexual and harassing in nature." (*Id.* ¶ 29.)

As part of her employment, Wolbert regularly attended company functions where Puckett was present. (*Id.* ¶ 30.) On several occasions, "Puckett behaved in an inappropriate manner towards Wolbert[.]" (*Id.*) In part, Puckett's conduct caused Wolbert's co-workers "to gossip and speculate about the nature of their relationship."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SACV 16-00009-JLS (DFMx) | Date: April 11, 2016 |
| Title: Traci Wolbert v. Quality Systems, Inc. et al. | |

(*Id.*)  The FAC asserts that some of these co-workers "opined that Wolbert had obtained her position because she had engaged in, and/or was engaging in, a sexual relationship with Mr. Puckett."  (*Id.* ¶31.)  When Wolbert learned of these rumors, "she reported them to Puckett and again told him that she did not want to travel with him to any event or activity that was not work-related."  (*Id.* ¶ 31.)

In 2014, for the two-month period from January through March, "Puckett repeatedly pressured Wolbert to move to Irvine with him."  (*Id.* ¶ 32.)  The FAC alleges that "no one else who reported to Puckett, nor any other executive of the company, was being asked to move to Irvine."  (*Id.*)  After Wolbert declined the invitation, Puckett called Wolbert and warned Wolbert not to refuse.  (*Id.*)  The comments made Wolbert fearful for her safety and for her job.  (*Id.*)  When Wolbert asked whether the move was a condition of her employment, Puckett, who appeared drunk, stated that it was not.  (*Id.*)  Thereafter, Puckett "refused to authorize payment of Wolbert's bonus[.]"  (*Id.* ¶ 33.)  Wolbert eventually received her bonus in June 2014.  (*Id.*)  Additionally, after Wolbert's refusal to relocate, "Puckett became increasingly hostile when [Wolbert] refused his demands that she accompany him on trips[,]" including a trip to India.  (*Id.* ¶ 34.)

On August 24, 2014, Wolbert spoke to Donna Greene, NextGen's Senior Vice President of Human Relations, to report Puckett's conduct.  (*Id.* ¶ 35.)  Wolbert informed Greene that Puckett's conduct made her uncomfortable and that his conduct had prompted rumors within the company.  (*Id.*)  Wolbert also described Puckett's invitations to travel even where "no business justification" was present.  (*Id.*)  Greene informed Wolbert that "she had heard the rumors that Puckett and Wolbert were having a relationship."  (*Id.* ¶ 37.)  Additionally, Greene told Wolbert that she would talk to Puckett about the travel invitations.  (*Id.*)  Greene also instructed Wolbert to tell Puckett when his conduct made her uncomfortable.  (*Id.*)  The FAC alleges, on information and belief, that, following the meeting with Wolbert, Greene spoke with Puckett.  (*Id.* ¶ 38.)  Thereafter, Greene contacted Wolbert, told her she had spoken to Puckett, and informed her that the trip to India had been cancelled.  (*Id.*)

Notwithstanding Green's assurances, Puckett continued to tell Wolbert that the trip to India would go forward, including through text messages.  (*Id.* ¶ 39.)  On August 27, 2014, Wolbert informed Puckett that she did not want to travel to India with him.  (*Id.* ¶ 41.)  In response, "Puckett became hostile, repeatedly stating that they needed to make

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-00009-JLS (DFMx)                                    Date: April 11, 2016
Title: Traci Wolbert v. Quality Systems, Inc. et al.

the trip." (*Id.*)  Later in the same conversation, Puckett stated that "[t]his was a test.  I wanted to see how far I could push you.  I wanted you to say yes and follow my lead.  You failed the test.  I wanted to know that you are in this with me." (*Id.*)

On September 2, 2014, Wolbert had another telephone call with Greene. (*Id.* ¶ 42.)  On this call, Wolbert provided a more detailed history of the harassment that she had been experiencing. (*Id.*)  After the call, Wolbert sent Greene a timeline of events, with notes. (*Id.*)  Greene promised to discuss the situation with Puckett, but to keep the details of the complaint and timeline confidential. (*Id.*)  However, on September 3, 2014, Greene informed Wolbert that she had spoken to Puckett about the complaint and disclosed the timeline to him. (*Id.* ¶ 43.)  According to the FAC, Greene assured Wolbert that there would be no retaliation and stated that "[y]our working relationship just needs time to smooth over and I'm sure it will be back to normal." (*Id.*)

On October 9, 2014, Greene telephoned Wolbert to inform her that "8 employees had filed complaints" against her, including allegations that she was combative, uncooperative, and a poor leader. (*Id.* ¶ 44.)  The following day, on October 10, Greene and Puckett telephoned Wolbert to inform her that, although they did not credit the complaints, her thirty-five person team of employees would no longer report to her. (*Id.* ¶ 45.)  After Wolbert questioned whether the change was a result of her work performance, Greene assured her that "[n]o, none of this is due to your performance . . . you aren't letting [Puckett] down, rather the contrary.  It is because of your accomplishments and track record that we know you can rebuild from scratch[.]" (*Id.* ¶ 46.)  Wolbert was also informed that she would be placed in a new position reporting to Ben Mehling, and that her compensation would be reduced by fifty percent because she had been "making too much money." (*Id.*)  According to the FAC, "Wolbert was demoted in retaliation for her complaints regarding harassment by Puckett." (*Id.* ¶ 48.)

On October 20, 2014, Wolbert sent a letter to Quality System's Board of Directors to request an impartial investigation into her complaints of harassment and retaliation. (*Id.* ¶ 49.)  Wolbert further requested that Quality Systems take "appropriate disciplinary action" against Puckett and Greene, and to restore her to a comparable position and compensation level. (*Id.*)  On November 4, 2014, Wolbert received an email from Shadi Ghaffarzadeh, an attorney in Quality Systems' legal department, advising her that Wolbert was scheduled to meet with an "independent third party investigator[.]" (*Id.* ¶

**CIVIL MINUTES – GENERAL**                                    4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-00009-JLS (DFMx)                          Date: April 11, 2016
Title: Traci Wolbert v. Quality Systems, Inc. et al.

50.) The investigator had been retained by Quality Systems to "investigate the issues raised in [her] October 20, 2014 letter to the Board." (*Id.*) The interview was scheduled for November 6, 2014 in Irvine, California. (*Id.*)

On November 6, 2014, Wolbert met with Matthias Wagener, an attorney who had been retained to conduct the investigation. (*Id.* ¶ 51.) The interview lasted an entire day and was held at the Quality Systems' corporate headquarters in Irvine, California. (*Id.*) At the interview, Wolbert "described, in detail, the harassment and retaliation to which she had been subjected, and gave Wagener a list of people to interview." (*Id.*) Wolbert further told Wagener that "Greene had previously protected male employees who had sexually harassed or discriminated against female employees." (*Id.*) Wolbert provided Wagener with detailed information regarding these prior instances. (*Id.*)

On December 1, 2014, Wagener sent a letter to Wolbert's attorney stating that he had shared Wolbert's concerns of retaliation with the company and that he was continuing to investigate. (*Id.* ¶ 52.) As alleged in the FAC, thereafter Quality Systems "began a review of work that Wolbert had performed since her demotion, in order to manufacture a record of poor performance on the part of Wolbert, and justify her termination." (*Id.* ¶ 53.) During this period, "Wolbert was repeatedly excluded from meetings and was not included in email communications in which her work and that of her team was discussed and reviewed." (*Id.*) On December 18, 2014, Ricki Morgan, an independent contractor, informed Wolbert that she, Mehling, and Dr. Robert Murry were evaluating work done by Wolbert and her team. (*Id.* ¶ 54.) When asked by Wolbert whether the review concerned her performance, Mehling stated "[a]bsolutely not." (*Id.*) On December 22, 2014, Wagener re-interviewed Wolbert via Skype. (*Id.* ¶ 56.) The interview "was almost entirely directed towards questions regarding Wolbert's performance." (*Id.*)

On January 30, 2015, Wolbert received a call from Mehling and a representative from Human Resources informing her that she was being terminated for her "performance on the NG7 project." (*Id.* ¶¶ 59-60.) At the time of the call, Mehling was based in Quality Systems' corporate headquarters in Irvine, California. (*Id.* ¶ 60.) According to the FAC, "Wolbert was terminated in retaliation for her complaints to Greene about the sexual harassment and retaliation that Wolbert had suffered on account of Puckett's conduct, as well as in retaliation for her complaints that Greene had

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-00009-JLS (DFMx)            Date: April 11, 2016
Title: Traci Wolbert v. Quality Systems, Inc. et al.

previously protected male employees who had sexually harassed or discriminated against female employees." (*Id.* ¶ 61.)

On December 3, 2015, Wolbert filed a complaint against Defendants in Orange County Superior Court. (Notice of Removal, Ex. A, Doc. 1-2.) Defendants removed the action to this Court on January 5, 2016. (Notice of Removal, Doc. 1.) Wolbert filed the operative FAC on January 21, 2016. (FAC, Doc. 14.) The instant Motion followed.

## II. **LEGAL STANDARD**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) is to "prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citing *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26-27 (1960)). A motion for transfer lies within the discretion of the district court, and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

When determining whether a transfer is proper, a court must employ a two-step analysis. First, a court must consider the threshold question of whether the case could have been brought in the forum to which the moving party seeks to transfer the case. *See Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). Only after this requirement has been satisfied, should a court consider whether a change of forum is warranted by an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622).

As the Supreme Court has made clear, this individualized analysis requires a court to "evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013). These dual considerations are often referred to as "the parties' private interests" and the "public-interest factors," respectively. *Id.* at 581, n.6. As enumerated by the Ninth Circuit, the former include:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-00009-JLS (DFMx)            Date: April 11, 2016
Title: Traci Wolbert v. Quality Systems, Inc. et al.

>    (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the cost of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498-99. Separately, "[p]ublic-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 134 S.Ct. at 581, n.6 (citation omitted).

"A transfer of venue is not appropriate unless the factors enumerated strongly favor venue elsewhere." *Moreno v. SFX Entm't, Inc.*, No. CV 14-880 RSWL CWx, 2014 WL 3810121, at *3 (C.D. Cal. Aug. 1, 2014) (citing *Pac. Car & Foundry v. Pence*, 403 F.2d 949, 953 (9th Cir. 1968)). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Id.* (citing and quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).

### III.  DISCUSSION

The Court finds – and the Parties do not dispute – that the proposed transferee district, the Eastern District of Pennsylvania, is one wherein the action could have been brought. (*Compare* Mot. at 9-10 (arguing that an E.D. Pa. district court would have both diversity and personal jurisdiction, and would be a proper venue) *with* Opp. at 8-15 (contesting only the convenience factors).) Therefore, the Court's analysis focuses on whether a change of forum is supported by an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org.*, 487 U.S. at 29 (quoting *Van Dusen*, 376 U.S. at 622). The Court considers the relevant private- and public-interest factors in turn.

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SACV 16-00009-JLS (DFMx) | Date: April 11, 2016 |
| Title: Traci Wolbert v. Quality Systems, Inc. et al. | |

### A. <u>Private-Interest Factors</u>

#### 1. Negotiation and Execution of Relevant Agreements

Because the instant case is not, at core, a contract dispute, this factor is not dispositive. However, the allegations in this case directly implicate Wolbert's employment with NextGen. (*See generally* FAC ¶¶ 17-34.) And, as a result, contracts relating to her employment are necessarily of some import. Accordingly, the Court notes that Wolbert entered into an employment contract with NextGen in 2002. (La Fiura Decl., Ex. 1, "Wolbert Decl.," at ¶¶ 3-4, Doc. 20-2.) At that time, she also signed an Employee Confidential Information Agreement. (*Id.*) It is undisputed that these agreements were entered into while Wolbert resided in California. (*Id.* ¶ 3, Ex. A, "Employment Letter.") Moreover, the Confidentiality Agreement expressly states that any disputes arising therefrom are to be governed by California law. (*Id.* ¶4, Ex. B, "Confidentiality Agreement.") Because of the nexus between these agreements and California, on balance, this factor counsels against a transfer.

#### 2. The Forum Most Familiar with Governing Law

The FAC states the following three causes of action: (1) sexual harassment and retaliation in violation of FEHA and Title VII, (2) failure to prevent discrimination, harassment, or retaliation in violation of FEHA and Title VII, and (3) wrongful termination in violation of public policy, as embodied by the California Constitution. (FAC ¶¶ 62-90.) Although federal district courts are equally equipped to resolve questions of federal law, each of Wolbert's claims implicates California law. Therefore, this factor also favors denying Defendants' Motion. *See, e.g.*, *Heil v. Wells Fargo Bank*, No. C06-02002 MJJ, 2006 WL 2411416, at *2 (N.D. Cal. Aug. 18, 2006) (concluding that applicability of Utah state law favors transfer of action from California to federal district court in Utah).

#### 3. Choice of Forum and Contacts with Forum State

___

**CIVIL MINUTES – GENERAL**         8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 16-00009-JLS (DFMx)            Date: April 11, 2016
Title: Traci Wolbert v. Quality Systems, Inc. et al.

     In the instant case, several of the *Jones* factors are interrelated. Therefore, the Court considers concurrently Wolbert's choice of forum, her contacts with the forum state, and the nexus between these contacts and Wolbert's causes of action. Although it is undisputed that Wolbert selected the Central District of California as her preferred forum, Defendants contend such a choice "is given less weight . . . where the plaintiff is not a resident of the chosen forum or where the forum lacks any significant connection to the acts giving rise to the litigation. (Mot. at 13-14 (citing *Catch Curve, Inc. v. Venali, Inc.*, No. CV05-04820 DDP(AJWx), 2006 U.S. Dist. LEXIS 96379, at *5-6 (C.D. Cal. Feb. 27, 2006)).) In Opposition, Wolbert argues her preferred forum is relevant because "many of the operative facts occurred in [the Central District.]" (Opp. at 11.)

     As other courts in the Ninth Circuit have made clear, "where the forum lacks a significant connection to the activities alleged in the complaint, the degree to which courts defer to the plaintiff's chosen venue is substantially reduced." *Broad. Data Retrieval Corp. v. Sirius Satellite Radio, Inc.*, No. CV 06-1190 JFW SSX, 2006 WL 1582091, at *3 (C.D. Cal. June 6, 2006) (internal quotation marks and citation omitted). Here, however, there exists a "significant connection" between Wolbert's preferred forum and her allegations. As discussed, at the time of her hiring, Wolbert entered into an employment contract while a resident of California. (FAC ¶ 17; Wolbert Decl. ¶ 2.) Additionally, Wolbert entered into an employment-related confidentiality agreement with a California choice of law provision. (Confidentiality Agreement at 2.) Furthermore, based on the allegations in the FAC, it appears that substantial parts – if not all – of the internal investigation into Wolbert's harassment and retaliation allegations occurred at Quality System's headquarters in Irvine, CA. (FAC ¶¶ 49-52, 60; Wolbert Decl. ¶¶ 28-29.) Finally, the allegations in the FAC suggest that the decision to terminate Wolbert was made, at least in part, by individuals based in California. (*Id.* ¶¶ 54-61.)

     Based on these facts, the Court concludes that there is a "significant connection" between the Central District of California – the forum selected by Wolbert – and the allegations contained in the FAC. Therefore, Wolbert's choice of forum is entitled to substantial weight. These factors therefore favor denying Defendants' Motion.

### 4. Non-Party Witnesses

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SACV 16-00009-JLS (DFMx) | Date: April 11, 2016 |
| Title: Traci Wolbert v. Quality Systems, Inc. et al. | |

Each Party contends that, based on the location of the witnesses they intend to call, this factor favors their position. (*Compare* Mot. at 11-12 (identifying twelve "critical" witnesses) *with* Opp. at 4-5 (listing five California-based material non-party witnesses).)

Specifically, Defendants identify twelve "critical witnesses," six of whom purportedly reside in Pennsylvania. (Mot. at 12.) Moreover, according to Defendants, four additional witnesses "live in states considerably closer to Pennsylvania than California[.]" (*Id.*) Finally, the remaining two witnesses, both of whom reside in California, "will not be difficult to produce for depositions and/or trial" because these individuals are current- or former-employees. (*Id.*) Wolbert responds that only ten of Defendants' twelve witnesses are "reasonably necessary to its defense." (Opp. at 5-6.) Of these ten witnesses, two reside in California while the remaining eight "are current employees of Defendants and can be easily produced in either venue." (*Id.* at 6.)

Wolbert, for her part, argues that "[m]ore party and non-party witnesses are located within one-hundred miles of the Central District of California than the Eastern District of Pennsylvania." (*Id.* at 4.) Wolbert contends that both Quality Systems and NextGen have a principal place of business in California, and, as a result, that California is where "all of their executive, administrative, financial, and management functions are conducted." (*Id.*) Wolbert specifically identifies five third-party witnesses who resided within 100 miles of the Central District of California. (*Id.* at 5.) These individuals include Wolbert's most recent supervisor, who terminated her employment, and the individual retained by Quality Systems to investigate Wolbert's sexual harassment and retaliation claims. (*Id.*) Defendants object that only four of these five witnesses are "material" to the case, and that two of the remaining four witnesses have been "totally cooperative to date." (Reply at 3.) In fact, both witnesses have "provided sworn affidavits to appear for trial in Philadelphia if necessary." (*Id.*; La Fiura Decl., Exs. 2 & 3, Doc. 26-1.) Furthermore, Defendants argue, Wolbert's initial Rule 26(a) disclosures identify an additional eighteen potential witnesses, only three of whom reside in California. (Reply at 4-5; Joint Rule 26(f) Report, Ex. C, Doc. 21.)

Each Party's argument suffers from certain deficiencies. Defendants' contentions are unpersuasive because at least half of their proposed witnesses are their own employees. As courts in the Ninth Circuit have held, "[c]onvenience of employees is less

___

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SACV 16-00009-JLS (DFMx) | Date: April 11, 2016 |
| Title: Traci Wolbert v. Quality Systems, Inc. et al. | |

important than the convenience of non-party witnesses." *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009). Of the remaining six witnesses, one – Donna Greene – lives in California and, based on the allegations in the FAC, appears to be heavily involved in the underlying events of this case. Likewise, another of the remaining witnesses is Wolbert herself. For obvious reasons, it is unlikely that any court would have difficulty obtaining her testimony. However, Wolbert's arguments fare no better. Two of her five purportedly "material" witnesses have signed affidavits stating that they would appear at trial irrespective of location. Moreover, a number of the other witnesses listed in Wolbert's Rule 26(a) disclosures are based in Pennsylvania.

In sum, this factor is neutral.

### 5. Sources of Proof

As to the final factor of the "interests of justice" analysis, namely, sources of proof, Defendants argue that "the physical evidence in their possession are located within or closer to the Eastern District of Pennsylvania." (Mot. at 13.) However, Wolbert responds that many, if not all, of the relevant documents identified by Defendants "are present on a computer network and therefore accessible from anywhere." (Opp. at 12.) More persuasive is the fact that certain documents – for example, those relating to the investigation into Wolbert's sexual harassment complaints, which occurred in California – are likely to be found within the Central District of California and not in Pennsylvania. Additionally, given that Defendants do not dispute that they are California corporations, it seems likely they possess the means to readily obtain documents within their possession, even if located in Pennsylvania. Therefore, the Court finds this element to be neutral.

### B. **Public-Interest Factors**

Defendants offer three arguments as to why the public-interest factors favor transfer. (Mot. at 14-15.) First, Defendants contend "the local interest in this controversy is stronger in the Eastern District of Pennsylvania" because that is where Wolbert lived,

___

**CIVIL MINUTES – GENERAL**          **11**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SACV 16-00009-JLS (DFMx) | Date: April 11, 2016 |
| Title: Traci Wolbert v. Quality Systems, Inc. et al. | |

worked and was allegedly harmed. (*Id.* at 14.) Second, Defendants assert that there is greater docket congestion – as measured by pending cases and weighted filings – in the Central District of California than in the Eastern District of Pennsylvania. (*Id.* at 14-15.) Finally, Defendants posit that this matter "involves no unique issue of California law[.]" (*Id.* at 15.)

In opposition, Wolbert challenges each of these arguments. (Opp. at 12-15.) Specifically, Wolbert argues that the Central District of California has a local interest in adjudicating this matter because both Defendants are headquartered in Irvine, California. (*Id.* at 12.) Therefore, Wolbert contends, her claims "concern[] the actions of Californians at California companies." (Opp. at 13.) Additionally, Wolbert emphasizes that her claims implicate California law and that, contrary to Defendants' assertions, the Eastern District of Pennsylvania's docket – as measured by "median pretrial duration" – is the more congested forum. (*Id.* at 14-15.)

The Court finds that both districts have a plausible "local interest" in adjudicating Wolbert's claims. In terms of docket congestion – as measured by the number of pending actions per judge (445 vs. 391) and the weighted filings per judge (655 vs. 393) – the Central District of California is the busier docket. *See generally* Federal Court Management Statistics, "Comparison of Districts – 12-Month Period Ending June 30, 2015," www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/06/30-1. In contrast, however, because Wolbert's claims rely in part on California state law claims, the Central District of California has a greater familiarity with at least some of the applicable law. Therefore, when balanced, the Court finds that the public-interest factors are neutral as to whether a transfer is appropriate.

### C. Summary of Private- and Public-Interest Factors

For the reasons stated above, the Court finds that a predominance of the private-interest factors disfavor transferring Wolbert's action to a forum in Pennsylvania. This outcome is not altered when the public-interest factors are considered because, when taken collectively, they are neutral. As discussed, "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal*, 805 F.2d at 843. Here, Defendants fail to do so.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 16-00009-JLS (DFMx)  Date: April 11, 2016
Title: Traci Wolbert v. Quality Systems, Inc. et al.

**IV.  CONCLUSION**

Accordingly, the Court DENIES Defendants' Motion to Transfer Venue.

Initials of Preparer:  tg